UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| MALIBU MEDIA, LLC, | § | |
|---|---|---|
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION H-18-1042 |
| JORGE ESCOBAR, | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Malibu Media, LLC's ("Malibu Media") motion for default judgment against defendant Jorge Escobar. Dkt. 21. Having considered the amended complaint, motion, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

### I. BACKGROUND

This case arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101–1332 (the "Copyright Act"). Dkt. 12 at 1. Malibu Media alleges that it owns copyrights to nineteen adult films (the "Copyrighted Works") and that Escobar used computer software known as BitTorrent to illegally download, copy, and distribute the films. Dkt. 12 at 4.

Malibu Media is a California corporation engaged in the production and distribution of adult erotic films through its website "X-Art.com." *See* Dkt. 6-1 (Pelissier Decl.) (explaining Malibu Media's business plan). Customers pay monthly or annual subscription fees to access an online library of copyrighted video content, and those sales are Malibu Media's primary source of revenue. *Id*. at 2. However, Malibu Media claims its content is well known and ranks as the most downloaded

adult content on several popular BitTorrent websites. *Id.* Malibu Media contends that it "must protect its copyrights in order to survive and . . . hope for future revenue growth." *Id.* at 3.

**A.     BitTorrent**

Malibu Media alleges that the copyright infringement occurred through the use of BitTorrent, a peer-to-peer file sharing system primarily used for distributing large amounts of data, including digital movie files. Dkt. 12 at 3. Malibu Media explains that "[i]n order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces" and assigns each piece a "hash"—a unique alphanumeric identifier, similar to an electronic fingerprint. *Id*. "Every digital file has one . . . hash value correlating to it. The BitTorrent protocol uses [the] hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing." *Id.* Further, the entire digital media file also has a hash value that acts as a digital fingerprint to identify the media file or movie. *Id.*

To facilitate a large file exchange, BitTorrent users "exchange [the] small pieces among each other instead of attempting to distribute a much larger digital file." *Id.* Once a software user finishes downloading all the pieces of a digital media file, "the BitTorrent software uses the file hash to determine that the file is complete and accurate," then it "reassembles the pieces so that the file may be opened and utilized." *Id.* at 3–4.

**B.     Alleged Copyright Infringement**

Malibu Media hired an investigator, IPP International UG ("IPP"), to identify individuals who use BitTorrent to illegally download and distribute its content. Dkt. 6-3 at 1 (Fieser Decl.). IPP uses software to detect the Internet-protocol ("IP") addresses of BitTorrent users that distribute Malibu Media's copyrighted content within the BitTorrent file distribution network. *Id.* IPP claims

that it established a direct transmission control protocol/Internet protocol ("TCP/IP") connection with the assigned IP address of 73.76.31.213, which Malibu Media alleges belonged to Escobar. *Id.* at 2–3; *see also* Dkt. 12 at 4 (connecting Escobar to the assigned IP address). Malibu Media claims that IPP downloaded a full copy of each file hash from the BitTorrent network and confirmed that the file hash matched files containing Malibu Media's Copyrighted Works. Dkt. 12 at 4. Malibu Media asserts that IPP's investigation revealed that Escobar had used BitTorrent to download, copy, and distribute its Copyrighted Works without authorization. *Id.*

**C.     Procedural History**

On April 3, 2018, Malibu Media filed a complaint against an unnamed individual—John Doe, a subscriber with an IP address of 73.76.31.213—who allegedly used BitTorrent to download, copy, and distribute Malibu Media's Copyrighted Works without its consent, thereby infringing its copyrights. Dkt. 1. After filing the complaint, Malibu Media moved for leave to serve a third-party subpoena on John Doe's Internet service provider to obtain the subscriber's name and contact information. Dkt. 6. The court granted the motion, after which Malibu Media filed an amended complaint naming Escobar as the infringer. Dkt. 8; Dkt. 12. On January 9, 2019, Malibu Media filed a motion for default judgment against Escobar. Dkt. 21. Malibu Media's attorney has sworn that Escobar is not a minor, incompetent, or in active military service. Dkt. 21-3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 4 requires the plaintiff to serve a copy of the summons and complaint on the defendant. Fed. R. Civ. P. 4(c)(1). Under Rule 55(b)(2), a party may apply for the court to enter a default judgment, and the "court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Local Rule 5.5 requires a motion for default judgment to be served upon the defendant via certified mail, return receipt requested. S.D. Tex. L.R. 5.5.

These rules "are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

Escobar has failed to appear, plead, or otherwise defend against this lawsuit. Dkt. 21-3. Malibu Media properly served Escobar with its lawsuit and motion for default judgment. Dkt. 15; Dkt. 21. Given Escobar's failure to answer the amended complaint in a timely manner, the court has the authority to: (1) accept all well-pleaded facts in Malibu Media's amended complaint as true, (2) enter default judgment against Escobar, and (3) award the relief sought by Malibu Media in this action. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("A default judgment is unassailable on the merits but only so far as it is supported by *well-pleaded* allegations, assumed to be true.").

### III. ANALYSIS

To receive a default judgment, a plaintiff must state a plausible claim for relief. *Id.* Malibu Media argues that Escobar committed direct copyright infringement. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282 (1991).

4

A.     **Ownership of a Valid Copyright**

Section 411 of the Copyright Act governs registration and civil copyright infringement actions, barring suit "until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a) (2011). "[C]opyright certificates of registration . . . 'constitute prima facie evidence of the validity of the copyrights'" and create "a rebuttable presumption that the copyrights are valid." *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995) (quoting § 410(c)).

Malibu Media alleges that it is the registered owner of the nineteen Copyrighted Works listed in Exhibit B, providing a Copyright Office registration number, registration date, and date of first publication for each.[1] Dkt. 12 at 4; Dkt. 12-2. Escobar has not rebutted Malibu Media's prima facie evidence of copyright validity. Therefore, the court finds that Malibu Media has demonstrated valid copyright ownership for the Copyrighted Works, satisfying the first element of copyright infringement.

B.     **Direct Copyright Infringement**

Succeeding in an infringement claim also requires proof of unauthorized copying of the original work. *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001). "[M]aking copyrighted

---

[1] Malibu Media's original complaint lists thirteen of its Copyrighted Works' registration numbers as "pending." Dkt. 1-2. However, Malibu Media's amended complaint lists registration numbers for all nineteen Works. Dkt. 12-2. The court need not address whether the "pending" registrations satisfy the Copyright Act's registration requirement because "the Fifth Circuit requires only that the Copyright Office actually receive the application, deposit, and fee before a plaintiff files an infringement action," and subsequent filings may cure any potential registration defects present in an original complaint. *See Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365–66 (5th Cir. 2004) ("The notion that the supplemental pleading cures the technical defect, notwithstanding the clear language of [17 U.S.C.] § 411, is consistent with the principle that technicalities should not prevent litigants from having their cases heard on the merits.").

works available for download via a peer-to-peer network contemplates 'further distribution,' and thus constitutes a violation of the copyright owner's exclusive 'distribution' right under 17 U.S.C. § 106(3)." *Atl. Recording Corp. v. Anderson*, No. H-06-3578, 2008 U.S. Dist. LEXIS 53654, at *19 (S.D. Tex. Mar. 12, 2008) (Gilmore, J.). "Copyright infringement actions . . . ordinarily require no showing of intent to infringe. Instead, knowledge and intent are relevant in regard to damages." *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir. 2000).

Malibu Media claims that Escobar used the BitTorrent protocol "to illegally download, reproduce, distribute, perform and display" Malibu Media's Copyrighted Works in violation of the Copyright Act. Dkt. 21-1 at 8–9. Malibu Media alleges that its investigator "established a direct TCP/IP connection with [Escobar's] IP address" and downloaded "one or more pieces of each of the digital media files identified by the file hashes in Exhibit A." *Id.* at 8 (referencing Dkt. 12-1). Each file hash listed in Exhibit A correlates to a Copyrighted Work listed in Exhibit B. *Id.* Malibu Media's investigator verified each digital media file listed in Exhibit A as a copy of Malibu Media's corresponding Copyrighted Work. *Id.* Finally, Malibu Media claims that Escobar was not authorized to copy or distribute the Copyrighted Works. *Id.* at 9.

Malibu Media has pled enough facts, when taken as true, to support the allegation of unauthorized copying and distribution of its Copyrighted Works. Therefore, the court finds that Malibu Media has satisfied the second element of copyright infringement.

## C. Default Judgment

While "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations," *Sun Bank of Ocala*, 874 F.2d at 276, Escobar failed to respond to Malibu Media's amended complaint. Because Malibu Media sufficiently proved

copyright infringement's two elements for its nineteen Copyrighted Works, the court GRANTS Malibu Media's motion and enters default judgment against Escobar.

## IV. DAMAGES

In its amended complaint, Malibu Media requests that the court issue an injunction against Escobar and seeks relief in the form of statutory damages, attorneys' fees, and costs. Dkt. 12 at 6.

### A.     Injunctive Relief

Malibu Media seeks an order enjoining Escobar and all other persons in active concert or participation with him from continuing to infringe upon Malibu Media's Copyrighted Works. *Id.* Further, Malibu Media seeks an order requiring Escobar to delete and permanently remove all infringing copies of Malibu Media's Works, and all related digital media files, from Escobar's computers. *Id.*

Section 502(a) of the Copyright Act permits a court to grant injunctive relief on terms it finds "reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a) (2017). The Supreme Court has stated that

> a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837 (2006).

First, Malibu Media has demonstrated that it has been irreparably injured. The presence of its Copyrighted Works on Escobar's computer, and the computers of those in active concert or participation with him, subjects Malibu Media to the continued infringement of its Works. By

introducing the Works to the BitTorrent network, Escobar exposed them to a level of infringement that Malibu Media properly characterizes as "viral." Dkt. 21-1 at 16.

Second, Malibu Media has shown that monetary damages are inadequate to remedy its injury. Because of the nature of the BitTorrent protocol, the full extent of distribution of Malibu Media's Copyrighted Works cannot be measured. BitTorrent users operate in a "swarm," with multiple users each simultaneously uploading and downloading content with multiple other users. *Id.* This leads to an exponential infringement of Malibu Media's Works that cannot be compensated by a dollar amount or otherwise remedied at law.

Third, an injunction would not burden Escobar; it merely would require him to comply with the law. *Atl. Recording Corp.*, 2008 U.S. Dist. LEXIS 53654, at *27. Finally, an injunction would serve the public interest by upholding Malibu Media's protections under the Copyright Act and restraining infringement in the manner prescribed by § 502(a).

Malibu Media has shown it is entitled to injunctive relief based on Escobar's alleged violations of the Copyright Act. An injunction must be narrowly tailored to remedy only a plaintiff's specific harms; it may not enjoin all possible breaches of the law. *See* Fed. R. Civ. P. 65(d) (outlining an injunction's required contents and scope); *Scott v. Schedler*, 826 F.3d 207, 212–13 (5th Cir. 2016) ("An injunction should not contain broad generalities."). The court finds that Malibu Media's proposed injunction is not overly broad and merely enjoins Escobar from engaging in further infringing conduct. The court GRANTS Malibu Media's request for an injunction and orders Escobar to delete and permanently remove all infringing copies of Malibu Media's nineteen Copyrighted Works, and all related digital media files, from Escobar's computers.

B.   **Statutory Damages**

Malibu Media seeks statutory damages pursuant to 17 U.S.C. § 504(c). Dkt. 12 at 6. "[T]he copyright owner may elect . . . to recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1) (2010). In a case of willful infringement, a court may increase the statutory damages sum to $150,000. *Id.* § 504(c)(2).

Malibu Media requests an award of $750 per Copyrighted Work, amounting to a sum of $14,250.[2] Dkt. 21-1 at 14. Malibu Media argues that its request is reasonable given that Escobar materially aided "thousands of infringers," leading to lost sales of Malibu Media's content that far exceed $14,250. *Id.* The court finds that Malibu Media's $750 request for each of its nineteen Copyrighted Works is reasonable and GRANTS Malibu Media a statutory damages award in the sum of $14,250.

C.   **Attorneys' Fees and Costs**

In a civil copyright action, a court, in its discretion, may grant costs to the prevailing party, including an award of reasonable attorneys' fees. 17 U.S.C. § 505 (2017). To collect costs, "parties must maintain their own record of taxable costs" and file "a bill of costs within 14 days of the entry of a final judgment." S.D. Tex. L.R. 54.2. When seeking an award for attorneys' fees, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933 (1983).

---

[2]Malibu Media discusses willful infringement and a possible $150,000 recovery. Dkt. 21-1 at 13. However, it ultimately requests only $14,250. *Id.* at 14, 14 n.3.

Malibu Media requests an award for its reasonable attorneys' fees and costs. Dkt. 12 at 6. Pursuant to 17 U.S.C. § 505, the court GRANTS Malibu Media's request and, pursuant to Local Rule 54.2, orders it to file a bill of costs, including reasonable attorneys' fees, within 14 days of the court's entry of final judgment.

## V. CONCLUSION

The court GRANTS Malibu Media's motion for default judgment. The court ORDERS that judgment by default be entered in favor of plaintiff Malibu Media against defendant Jorge Escobar and awards Malibu Media the following:

1. statutory damages in the amount of $14,250;

2. post-judgment interest at the rate of 2.55% per annum from entry of judgment until the judgment is paid in full;[3] and

3. all costs, including an award of reasonable attorneys' fees, as provided by law.

Further, the court ENJOINS the defendant as follows:

1. Defendant Jorge Escobar is enjoined from directly, contributorily, or indirectly infringing plaintiff Malibu Media's rights under federal or state law in the nineteen Works protected by Copyright Registration Nos.: PA0002100520, PA0002094801, PA0002085867, PA0002042043, PA0002042072, PA0002050594, PA0002094797, PA0002081983, PA0002050597, PA0002078611, PA0002078597, PA0002093283, PA0002093333, PA0002086118, PA0002094776, PA0002078602, PA0002078047, PA0002086111, and PA0001909783; including, without limitation, by using the

---

[3] Although Malibu Media did not request post-judgment interest in its pleading, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (2008). "Post-judgment interest is awarded as a matter of course. . . . The matter is not discretionary." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing § 1961(a)).

Internet, BitTorrent, or any other online media distribution system to reproduce (*e.g.*, download) or distribute the Works, or to make the Works available for distribution to the public, except pursuant to a lawful license or with plaintiff Malibu Media's express authority; and

    2. Defendant Jorge Escobar is ordered to destroy all copies of plaintiff Malibu Media's nineteen aforementioned Copyrighted Works, and all related digital media files, that defendant Jorge Escobar has downloaded onto any computer hard drive or server without plaintiff Malibu Media's authorization, and defendant Jorge Escobar shall destroy all copies of the nineteen Copyrighted Works transferred onto any physical medium or device in defendant Jorge Escobar's possession, custody, or control.

    Signed at Houston, Texas, on February 28, 2019.

                                                            Gray H. Miller
                                     Senior United States District Judge